*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NANCY MOBLEY,

Plaintiff-Appellant,

v

USAA CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
March 3, 2020

No. 345360
Wayne Circuit Court
LC No. 17-013577-NI

Before: REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in favor of defendant. We affirm.

Plaintiff has lived with her husband in a home located at 7276 Lozier, in Warren, Michigan, for the past 18 years and lives there currently. However, in August 2016, plaintiff moved in with her son, David Aldridge, because of a disagreement she had with her husband. Aldridge lives in a home located at 8175 Orchard, in Warren, Michigan. She brought all of her personal items to Aldridge's home and was giving Aldridge $50 a week to help with bills.

Aldridge had a policy of insurance issued by defendant which was effective from September 3, 2016 to December 9, 2016. On September 3, 2016, Aldridge added plaintiff to the insurance policy as an "additional operator." On September 16, 2016, plaintiff was involved in a motor vehicle accident. On the day of the accident, plaintiff was driving a motor vehicle owned by a family friend, Byron Irla. In October 2016, plaintiff moved back to 7276 Lozier, in Warren, Michigan.

When defendant failed and/or refused to pay expenses and losses for plaintiff arising out of the accident, allegedly due to her, under the no-fault act, MCL 500.3101, *et seq*., she filed a complaint asserting that defendant breached the insurance contract that existed between plaintiff and defendant. Defendant filed two motions for partial summary dispotion under MCL 2.116(C)(10), arguing that plaintiff was not a "named insured" on Aldridge's insurance policy, and did not reside primarily with Aldridge at the time of the accident so that the policy did not cover plaintiff. The trial court agreed and granted summary disposition in defendant's favor.

-1-

This Court reviews de novo a trial court's summary disposition rulings. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Summary disposition under MCR 2.116(C)(10) is appropriate where, "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In evaluating a motion under MCR 2.116(C)(10), the trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. *Id*. This Court also reviews de novo the construction and interpretation of an insurance contract. *Gurski v Motorists Mut Ins Co*, 321 Mich App 657, 665; 910 NW2d 385 (2017).

On appeal, plaintiff contends that the trial court erred in granting summary disposition in defendant's favor because she was domiciled with Aldridge at the time of the accident and was listed as an "operator" on his policy of insurance with defendant. We disagree.

"[A] personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." MCL 500.3114(1). This provision requires that a "relative" of the insured must be "domiciled in the same household" as the insured to recover no-fault benefits from the insured's insurer. *Grange Ins Co v Lawrence*, 494 Mich 475, 490-492; 835 NW2d 363 (2013). "A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court." *Id*. at 490.

"Michigan courts have defined 'domicile' to mean the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id*. at 493 (citation and quotation marks omitted). "Similarly, a person's domicile has been defined to be that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Id*. "[A] person may have only one domicile, but more than one residence." *Id*. at 494. When determining whether a relative is "domiciled in the same household" as an insured, the following factors can be considered:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household[.] [*Workman v Detroit Auto Inter–Ins Exchange*, 404 Mich 477, 496-497; 274 NW2d 373 (1979) (citations omitted).]

With respect to the first factor, plaintiff testified at her deposition that when she stayed with Aldridge in August 2016, she had no intention to divorce her husband. She just needed some space because she and her husband had been arguing. Plaintiff testified that whenever she and her husband would have a fight, she would "go to [her] son's house until me and him could talk it out, and I'd go home." Plaintiff testified that she has thus stayed on and off with her son at least five

-2-

times throughout the years when she and her husband would argue. Based on plaintiff's testimony, we agree with the trial court's determination that at the time of the accident "at best [plaintiff] was visiting her son for a few weeks cooling off because of a fight with her husband." Indeed, plaintiff returned to her marital home one month after the accident.

Plaintiff points out that in her deposition she stated that she had brought all her belongings when she had moved in with Aldridge in August 2016. However, plaintiff only brought clothing and other personal items to Aldridge's. Moreover, she did not change her address on her driver's license, and she informed the police officers responding to the accident that she lived at 7276 Lozier, Warren, Michigan.

The second factor, which considers the formality of the relationship between the persons in the household, is not at issue. Plaintiff is Aldridge's mother, thus, the two have a personal relationship. However, there is no indication that there was any formal arrangement in regards to plaintiff living with her son. While plaintiff was staying with Aldridge, she testified that she would pay him $50 a week to help with bills, and it was common for plaintiff to stay with Aldridge for a few weeks or months and then return to her marital home. Therefore, plaintiff and Aldridge had an informal living arrangement. As to the third factor, whether the place the person stays in is in the same house, the record shows that from August 2016 to October 2016, plaintiff was residing within Aldridge's home.

The fourth factor, the existence of another place of lodging by the person alleging "domicile" in the household, weighs heavily against plaintiff. Plaintiff testified that she took all of her personal belongings to Aldridge's home and that she had moved in with Aldridge from August 2016 to October 2016. However, she did not take any furniture, she never changed her address on driver's license, and she listed the marital home address as her primary address after the subject accident. Further, plaintiff's deposition testimony establishes that she would occasionally stay with Aldridge when she and her husband had a disagreement, but plaintiff always returned to her marital home. Therefore, plaintiff had a regular place of lodging other than Aldridge's home and there is no material question of fact that plaintiff's domicile was at the marital home.

Despite the above, plaintiff argues she was not precluded from coverage under the policy defendant issued to Aldridge. We disagree.

"The rules of contract interpretation apply to the interpretation of insurance contracts." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. If a contract provides definitions for any of its terms, we must apply those definitions, but otherwise the words in a contract are accorded their commonly used meanings. *Cavalier Mfg Co v Employers Ins of Wausau (On Remand)*, 222 Mich App 89, 94; 564 NW2d 68 (1997). We may consult a dictionary to determine the "plain and ordinary meanings" of any undefined terms. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010).

"A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory*, 473 Mich at 468 (emphasis in original). A contract is only ambiguous if "it allows two or more reasonable interpretations, or if the provisions cannot be reconciled with each other," even if the language is "inartfully worded or

clumsily arranged." *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). If a contract is ambiguous, its meaning must be determined by the trier of fact. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003). However, "if contractual language is clear, construction of the contract is a question of law for the court." *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008) (quotation marks and citation omitted).

Aldridge is the named insured on the relevant policy and plaintiff is listed on the insurance policy as an additional operator. The insurance policy defines a "covered person" for purposes of property protection and personal injury protection (PIP) benefits as:

1. You or any family member.

2. Any other person:

   a. While occupying your covered auto;

   b. While occupying a motor vehicle other than your covered auto,

   which is operated by you or any family member and to which

   Part A–Liability of this policy applies; or

   c. While not occupying any motor vehicle if the accident involves your

   covered auto.

The insurance policy defines "you" as the "named insured shown on the Declarations and spouse if a resident of the same household." It is undisputed that plaintiff is not the "named insured" under Aldridge's insurance policy. A "covered auto" is generally defined in the insurance policy as "[a]ny vehicle shown on the Declarations." At the time of the subject automobile accident, plaintiff was driving a vehicle owned by a family friend. Therefore, plaintiff was not occupying a "covered auto" at the time of the subject accident because the vehicle is not shown on the Declarations of Aldridge's insurance policy.

The policy defines "family member" as "a person related to you by blood, marriage or adoption who resides primarily in your household." Because the insurance policy does not define the phrase "resides primarily," plaintiff argues that the contract provision is ambiguous. This argument is unconvincing.

As our Supreme Court noted:

The fact that a policy does not define a relevant term does not render the policy ambiguous. Rather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings. Indeed, we do not ascribe ambiguity to words simply because dictionary publishers are obliged to define words differently to avoid possible plagiarism. [*Henderson v State Farm Fire & Casualty Co*, 460 Mich 348, 354; 596 NW2d 190 (1999) (citations omitted).]

The phrase "resides primarily" is not ambiguous because it is comprised of two words that have common use meanings.

The *Merriam-Webster's Collegiate Dictionary* (11th ed.) defines the term "reside" as "remain, abide," "to dwell permanently or continuously," and "to occupy a place as one's legal domicile." The word "primarily" means "for the most part" or "chiefly." *Merriam-Webster's Collegiate Dictionary* (11th ed.). On the basis of the definitions of the terms, the phrase "resides primarily" clearly means to live permanently or continuously for the most part in a place. The phrase implicates living in the place at issue for a significant period of time (permanently or continuously). The insurance policy will thus unambiguously provide coverage to relatives of the named insured who live in the same household as the insured for a significant amount of time. Plaintiff does not fall within the definition of "family member" for purposes of PIP benefits under the policy language.

Nevertheless, plaintiff also argues that the insurance policy does not require plaintiff to be domiciled with Aldridge at the time of the accident in order to receive benefits. Our Supreme Court has clarified that the terms "residence" and "domicile" are legally distinct despite having been historically treated as synonymous; and especially relevant in this case, "a person may have only one domicile, but more than one residence." *Grange Ins Co*, 494 Mich at 494-501. A residence is "any place of abode or dwelling place, however temporary." *Id*. at 494 (citation omitted). Although there need not be an intent to remain permanently or indefinitely, the person must have some kind of intent to remain. *Kar v Nanda*, 291 Mich App 284, 288; 805 NW2d 609 (2011).

The record establishes that plaintiff had resided at 7276 Lozier Avenue, in Warren, Michigan, for the past 18 years. Whenever plaintiff and her husband had a disagreement, plaintiff would take all of her personal belongings and stay at Aldridge's home for a period of time. However, after plaintiff and her husband would resolve their disagreement, plaintiff would return to her marital home. On the date of the accident, plaintiff was residing with Aldridge but did not intend to divorce her husband. She was simply allowing for some time for them to be apart. Plaintiff moved back in with her husband a month after the accident. Since moving back in with her husband after the accident, plaintiff again stayed with Aldridge for a period of time, and now currently resides with her husband. Based on the record, it appears that Aldridge's home is plaintiff's temporary safe haven, but she always intends to return to her marital home. Thus, although plaintiff was residing with Aldridge at the time of the accident, the record does not support the conclusion that she resided primarily at that residence.

Plaintiff also argues that she is entitled to PIP benefits under the "additional covered person" endorsement under Aldridge's insurance policy because she was added as an operator on the policy on September 3, 2016. The "additional covered person endorsement" provides:

> With respect to your covered auto described on the Declarations, we agree that coverage under Part A–Liability Coverage applies to each additional covered person shown on the Declarations. However, this applies only to the extent that the additional covered person under Paragraph 3. of the definition of covered person in Part A of this policy.

Paragraph 3 of the definition of "covered person" under Part A of the insurance policy provides:

> Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom coverage is afforded in 1.

or 2. above. With respect to an auto or trailer other than your covered auto, this provision only applies if the other person or organization does not own or hire the auto or trailer.

Plaintiff does not qualify as a "covered person" under the "additional covered person endorsement." Legal liability is not being imposed on plaintiff for the acts or omissions of a person whom coverage is afforded. Therefore, plaintiff is not entitled to insurance benefits under the "additional covered person" endorsement.

Finally, plaintiff argues that the trial court erred in finding that she is not entitled to uninsured motorist benefits under Aldridge's insurance policy. Plaintiff has provided no real analysis of this specific argument and uninsured motorist benefits are provided for in a separate section of the insurance policy with somewhat different definitions. "An appellant may not merely announce its position and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). "Insufficiently briefed issues are deemed abandoned on appeal." *Id*. Plaintiff's brief on appeal does not contain one argument as to how the trial court erred in granting defendant's motion for summary disposition regarding plaintiff's uninsured motorist claim. Therefore, plaintiff has abandoned this argument. *Id*. Nevertheless, we find that plaintiff does not qualify for uninsured motorist benefits under Aldridge's insurance policy.

The insurance agreement provides uninsured benefits when "a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of [bodily injury] sustained by a covered person and caused by an auto accident . . . ." A "covered person" for purposes of uninsured motorist benefits is defined as "[y]ou or any family member," or "[a]ny other person occupying your covered auto." Based on the foregoing analysis and plain language of the insurance policy, plaintiff does not qualify as a "family member" entitled to insurance benefits under Aldridge's insurance policy. Further, it is undisputed that plaintiff was not occupying a "covered auto" at the time of the accident because she was operating a vehicle owned by a family friend. Therefore, the trial court did not err in granting defendant's motions for summary disposition.

Affirmed.

/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto